UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MICHELLE ARABIA-ANDREWS AND TRICIA
HARMON, on behalf of themselves and others
similarly situated,

*Plaintiffs,*

–against–

CAPTAIN JOHN'S RESTAURANT, INC.,
ELAINE BROWN, AND ANDY BROWN,

*Defendants.*

**CLASS AND COLLECTIVE
ACTION COMPLAINT**

Case No.: 6:21-CV-0868 (BKS/ML)

---

The plaintiffs, Michelle Arabia-Andrews and Tricia Harmon, make the following

complaint, on behalf of themselves and other employees similarly situated, against the

defendants, Captain John's Restaurant, Inc., Elaine Brown, and Andy Brown:

## NATURE OF ACTION

1.      This is an action under the Fair Labor Standards Act and the New York Labor

Law to recover unpaid wages owed to the plaintiffs and to other employees similarly situated

and to recover tips owned by the plaintiffs and other employees similarly situated that the

defendants unlawfully misappropriated.

2.      The plaintiffs were employed as servers at Captain John's Restaurant in Sylvan

Beach, New York. During their employment, the defendants violated the plaintiffs' legal

rights in the following ways:

      a.   The defendants failed to record and pay for all the hours that the servers
worked by deducting 20 minutes per shift of four hours or more for breaks
that they knew the employees did not receive.

      b.   The defendants failed to provide wage notices and wage statements required
by the New York Labor Law.

      c.   The defendants required servers to share portions of the tips they earned with
non-tip eligible workers, including co-owner and manager Andy Brown.

    d.   The defendants took portions of tips earned by the plaintiffs and used them to pay for credit card processing fees for charges other than tips paid by credit card.

    e.   The defendants paid servers less than the minimum wage, and they cannot lawfully count a portion of the tips paid by customers as wages paid because they failed to legally comply with applicable tip credit laws and regulations.

    f.   The defendants required the plaintiffs to purchase uniforms, thus effectively reducing their pay below minimum wage.

3.    Plaintiffs seek declaratory and injunctive relief, recovery of unpaid minimum wages, misappropriated tips, liquated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs, under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

## JURISDICTION AND VENUE

4.    The Court has jurisdiction over plaintiffs' FLSA claims under 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337.

5.    The Court has jurisdiction over plaintiffs' NYLL claims under 28 U.S.C. § 1367.

6.    Venue is proper in this district under 28 U.S.C. § 1391 because the plaintiffs live in this district, and because the restaurant where the defendants do business and where the plaintiffs worked is located in this district.

## THE PARTIES

### *The Plaintiffs*

7.    Plaintiff Michelle Arabia-Andrews lives in Oneida County, New York.

8.    The defendants employed Arabia-Andrews as a server at from approximately February 2012 through June 2020.

9.    Plaintiff Tricia Harmon lives in Oneida County, New York.

10.     The defendants employed Harmon as a server from approximately February 2017 through June 2020.

11.     Arabia-Andrews, Harmon, and all other servers at Captain John's Restaurant were employees engaged in commerce or in the production of goods for commerce under 29 U.S.C. § 206(a).

*The Defendants*

12.     Defendant Captain John's Restaurant, Inc. is a New York corporation that owns, operates, and does business as Captain John's Restaurant and Tiki Bar, located on Oneida Lake in Sylvan Beach, New York.

13.     Throughout the plaintiffs' employment, the restaurant was open from approximately March or April through October, Tuesdays through Sundays. The restaurant would be open for business 4:00pm to 9:00pm Tuesday through Friday, 3:00pm to 9:00pm Saturday, and 1:00pm to 8:00pm Sunday. On holidays, the restaurant would open at noon.

14.     Throughout plaintiffs' employment the restaurant had employees engaged in commerce and handling, selling, and otherwise working on goods or materials that moved in commerce under 29 U.S.C. § 203(s)(1)(A)(i).

15.     In the three years before the filing of this complaint, Captain John's had an annual gross volume of sales exceeding $500,000.

16.     Defendant Elaine Brown is a co-owner, principal, and manager of Captain John's.

17.     Elaine Brown's husband, Defendant Andy Brown, is also a co-owner, principal, and manager of Captain John's.

18.    Elaine Brown and Andy Brown are both listed as principals of Captain John's on the New York State Liquor Authority's Division of Alcoholic Beverage Control license.

19.    Elaine Brown and Andy Brown each held and exercised power and authority over personnel decisions at Captain John's, including the power to hire, fire, and discipline employees, set schedules, pay, and other terms and conditions of employment, keep and maintain employee records, including records of time worked, and otherwise set the terms and conditions of servers' employment.

20.    Elaine Brown and Andy Brown each were actively involved in managing the restaurant's day-to-day operations.

21.    Elaine Brown and Andy Brown were each present at the restaurant nearly every night, and directed the work of employees, including servers.

22.    Elaine Brown and Andy Brown each supervised and controlled the work of servers, including the plaintiffs, by directing them when and where to work, what to wear, what to say, and otherwise directing them how to interact with customers.

23.    In addition, Elaine Brown would also monitor online reviews of the restaurant and follow up with employees, including the plaintiffs, to determine why a negative review was posted and to direct them how to work to avoid negative reviews.

24.    Elaine Brown was also responsible for maintaining the restaurant's records, including records of time worked by employees.

25.    Elaine Brown and Andy Brown each exercised sufficient control over the restaurant's operations and the plaintiffs' employment that each was an employer of the plaintiffs and others similarly situated under the FLSA and the NYLL.

## FACTUAL BACKGROUND

*The Plaintiffs' Hours and Pay*

26.    From the start of her employment in 2012 until the end of her employment in approximately June 2020, Michelle Arabia-Andrews worked 5 days per week and occasionally 6 days per week.

27.    Michelle Arabia-Andrews worked between approximately 20 and 35 hours per week.

28.    From the start of her employment through 2016, the defendants paid Michelle Arabia-Andrews $5.25 per hour.

29.    From 2017 through 2019, the defendants paid Michelle Arabia-Andrews $7.25 per hour.

30.    In 2020, the defendants paid Michelle Arabia-Andrews $10 per hour.

31.    Michelle Arabia-Andrews also did work for Captain John's in the off-season when the restaurant was closed, including advising Elaine Brown about the content of new menus, revising menus for readability and aesthetics, and helping Elaine Brown choose new uniforms that employees would be required to purchase, including buying and modeling items of clothing that would potentially be required for new uniforms. Michelle Arabia-Andrews was not paid for any of this work.

32.    From the start of her employment in approximately February 2017 until approximately June 2020, Tricia Harmon worked 3-4 days per week and occasionally 4 days per week.

33.    Tricia Harmon worked between approximately 15 to 20 hours per week.

34.    From the start of her employment until the end of her employment, the defendants paid Tricia Harmon $7.25 per hour.

***The Defendants Underreported and Underpaid Employee Work Time***

35.    Throughout their employment, the defendants deliberately underreported servers' hours worked, thus depriving them of their earned wages and reducing their wages below the legal minimum wage.

36.    For each shift that the plaintiffs and other servers worked that lasted four hours or more, Elaine Brown would deduct 20 minutes from the recorded work time, even though she knew that the plaintiffs did not receive a break during their shifts.

37.    In addition, the defendants would not permit the plaintiffs and other servers to clock in until they began waiting their first table, which meant that the first 20 to 60 minutes of each plaintiff's shift was unrecorded and unpaid.

38.    For example, to be best of her recollection, Michelle Arabia-Andrews worked three shifts of at least 4.5 hours during the week of March 11, 2019 to March 17, 2019, for a total of at least 13.5 hours, but the defendants deducted 20 minutes from each shift, did not record time worked at the beginning of such shifts, so that they only recorded and paid Michelle Arabia-Andrews for 10.75 hours.

39.    For example, to the best of her recollection, Tricia Harmon worked three shifts of at least 4.5 hours during the week of May 20, 2018 to May 26, 2018, for a total of at least 13.5 hours, but the defendants deducted 20 minutes from each shift and did not record time worked at the beginning of such shifts, so that they recorded and paid Tricia Harmon for less than 13.5 hours.

*The Defendants' Failure to Provide Wage Notices and Wage Statements*

40.    At no time did the defendants provide to any of their employees, including the plaintiffs, a wage notice notifying the employee of their rate of pay and of the other information required by New York Labor Law § 195(1).

41.    Though the defendants did provide their employees with pay stubs, these pay stubs did not reflect the tip credit amount taken as an allowance from the minimum wage, as required by New York Labor Law § 195(3).

42.    The pay stubs also did not accurately reflect the hours employees worked, because of the defendants' underreporting of employee work time.

43.    Although the pay stubs purported to reflect an amount of cash tips received by a server from customers that week, that number was frequently inaccurate. Upon information and belief, Elaine Brown manipulated the records to misstate the amount of tips servers earned.

44.    The pay stubs also did not reflect the deductions that the defendants took from the employee's tips, as explained further below.

*The Defendants' Misappropriation of Employee Tips*

45.    The defendants took portions of the plaintiffs' tips and kept them.

46.    Specifically, the defendants required all servers, including the plaintiffs, to "tip out" Defendant Andy Brown by taking a percentage of all their tips on beverage and food sales and giving that percentage to Defendant Andy Brown.

47.    Andy Brown was not eligible to participate in the tip pool because he was a manager, co-owner, and was the servers' employer.

48.    In approximately 2017, after employees complained about the unlawful practice of tipping out Andy Brown, because he was a manager, the defendants changed their practice to stop requiring servers to tip out Andy Brown for food sales. But they continued to require servers to tip out Andy Brown for beverage sales.

49.    At no time did the plaintiffs or any other servers enter into any mutual tip-sharing agreement among themselves authorizing the sharing of tips with other employees.

50.    The defendants never provided the plaintiffs or other servers with any accounting or reconciliation of their tips.

**_The Defendants' Charging of Credit Card Processing Fees Against Employee Wages and Tips_**

51.    The defendants also charged credit card processing fees against tips that plaintiffs received from customers.

52.    When a customer paid their bill by credit card, upon information and belief, the defendants charged the entire credit card processing fee for the entire bill against server's wages and tips, rather than charging just the portion of the processing fee attributable to the tip.

53.    In any case, because the defendants never paid Michelle Arabia-Andrews more than minimum wage until 2020, and because they never paid Tricia Harmon more than minimum wage, the credit card processing fees that they charged always reduced Tricia Harmon's pay below minimum wage, and always reduced Michelle Arabia-Andrews's pay below federal minimum wage until 2020, and always reduced Michelle Arabia-Andrews's pay below New York minimum wage.

*The Defendants Cannot Avail Themselves of the Tip Credit*

54.    At no time did the defendants inform the plaintiffs, or any other employees, of the provisions of the federal or New York tip credit laws and regulations.

55.    The defendants also asked servers to complete "sidework" as part of their job responsibilities. This "sidework" was work that did not involve interactions with customers and therefore did not result in tips—such as wiping down baseboards, cleaning windows, and other general cleaning in the restaurant, rolling silverware into napkins, wiping glasses and dishes, and refilling condiment bottles.

56.    Plaintiff Michelle Arabia-Andrews performed sidework both at the beginning of a shift, before any customers were in the restaurant, and during her shifts, between serving customers.

57.    Michelle Arabia-Andrews spent approximately 25% of her work time performing sidework.

58.    Plaintiff Tricia Harmon also performed sidework both at the beginning of a shift, before any customers were in the restaurant, and during her shifts, between serving customers.

59.    Tricia Harmon spent slightly more than 20% of her work time performing sidework.

*The Defendants' Uniforms*

60.    The defendants also required servers, including the plaintiffs, to purchase uniforms at the beginning each season, and to wear them during each shift.

61.    The uniform consisted of specific black pants approved by Elaine Brown, a Hawaiian shirt or later, a Captain John's-branded shirt, a plastic tropical flower hair clip, specific non-slip shoes, an apron, and tropical "flair," such as jewelry.

62.    In addition, the defendants would have periodic theme nights, such as "pirate night," during which they would require servers to dress up in a costume.

63.    Wearing a costume on theme nights was not optional; if a server did not dress up, he or she would not be permitted to work that night.  For example, during "pirate weekend" the defendants required servers to buy and wear a pirate costume, including a hat, shirt, skirt, and boots.

64.    The defendants did not provide costumes on theme nights, but they required servers to purchase costumes with their own money. For example, Michelle Arabia-Andrews spent between $50 and $75 buying costume items for each pirate weekend.

65.    The defendants would provide only one apron per server and required servers to purchase all other uniform items, including shirts and additional aprons, with their own money. For example, Michelle Arabia-Andrews bought two uniform shirts and three aprons per year in order to have enough to last through the workweek. The shirts cost $35, and the aprons cost $20.

66.    Because the defendants never paid Michelle Arabia-Andrews more than minimum wage until 2020, and because they never paid Tricia Harmon more than minimum wage, the uniform costs always reduced Tricia Harmon's pay below minimum wage, and always reduced Michelle Arabia-Andrews's pay below minimum wage until 2020.

## COLLECTIVE ACTION ALLEGATIONS

67.    Plaintiffs bring their claims under the FLSA on behalf of themselves and all similarly situated employees as a collective action under 29 U.S.C. § 216(b).

68.    The proposed collective action definition is as follows: All individuals who were employed as servers at Captain John's Restaurant and Tiki Bar in Sylvan Beach, New York, at any time during the period of three years preceding the filing of this complaint, who opt into this action by filing their written consent with the Court.

69.    Upon information and belief, the collective action includes at least 45 other employees who were subject to the defendants' common unlawful policies and practices.

70.    The plaintiffs and the collective action members are similarly situated because they were subjected to identical policies and practices, performed the same job duties, and were paid similarly.

71.    The defendants' unlawful policies and practices violated the rights of the FLSA collective action members in the following ways:

    a.  By deducting time from the collective action members' recorded work time for breaks that the collective action members did not take, the defendants deprived the collective action members of their earned wages and thus failed to pay minimum wage for all hours worked, in violation of 29 U.S.C. § 206(a)(1)(C).

    b.  By preventing the collective action members from clocking in until they began to wait their first table, the defendants deprived the collective action members of their earned wages and thus failed to pay minimum wage for all hours worked, in violation of 29 U.S.C. § 206(a)(1)(C).

    c.  By taking portions of the collective action members' tips and keeping them, the defendants violated 29 U.S.C. § 203(m)(2)(B).

    d.  By requiring the collective action members to share tips with a manager, the defendants violated 29 C.F.R. § 531.52(b)(2).

    e.  By requiring the collective action members to share tips without them having entered into a valid tip-sharing agreement, the defendants violated 29 C.F.R. § 531.54.

11

    f.   By paying the collective action members less than $7.25 per hour without qualifying to take advantage of the tip credit, the defendants failed to pay minimum wage for all hours worked, in violation of 29 U.S.C. § 206(a)(1)(C). The defendants failed to qualify to take advantage of the tip credit for the following reasons:

        i.   The defendants failed to inform the collective action members of the provisions of the tip credit law, in violation of 29 U.S.C. § 203(m)(2)(A)(ii).

        ii.   The defendants required the collective action members to share tips with others that were not eligible to receive tips, in violation of 29 C.F.R. § 531.54(c).

        iii.   The collective action members worked in non-tipped occupations for a substantial percentage of their work time.

    g.   By charging credit card processing fees against the collective action members' pay and tips, beyond the percentage of the fee attributable to tips paid to the employee by credit card, the defendants violated 29 U.S.C. § 230(m)(2)(B).

    h.   Because the collective action members were not paid more than minimum wage, by charging credit card processing fees that reduced the collective action members pay below minimum wage, the defendants failed to pay minimum wage for all hours worked, in violation of 29 U.S.C. § 206(a)(1)(C).

    i.   Because the collective action members were not paid more than minimum wage, by requiring the collective action members to purchase uniforms with their own money, the defendants effectively reduced the collective action members' pay below minimum wage, and thus failed to pay minimum wage for all hours worked, in violation of 29 U.S.C. § 206(a)(1)(C).

72.    The defendants knowingly engaged in these unlawful policies and practices to minimize their labor costs and deny collective action members their earned wages.

73.    The defendants engaged in these unlawful policies and practices intentionally, knowingly, willfully, and in bad faith.

74.    The collective action members would benefit from the issuance of Court-supervised notice informing them of this lawsuit and of their rights to join this lawsuit.

75.    The collective action members are known to the defendants and readily identifiable and locatable through the defendants' records.

76.    This Court should notify the collective action members of this lawsuit and of their right to opt into it by filing their written consent with the Court under 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

77.    The plaintiffs bring their claims under the NYLL as a class action under Rule 23 of the Federal Rules of Civil Procedure.

78.    The proposed class definition is as follows: All individuals who were employed as servers at Captain John's Restaurant and Tiki Bar in Sylvan Beach, New York, during the period of six years preceding the filing of this complaint.

79.    The class members are numerous enough that joinder of all class members is impracticable.

80.    Although the precise number of class members is unknown as present, the size of the class is estimated to be at least 60 individuals. The facts that will allow a precise calculation of the size of the class are within the sole control of the defendants.

81.    Because the hours recorded to have been worked, the rates of pay, and the dates of employment of each server are readily determinable from the defendants' records, the class members can readily be identified from the defendants' records, and their names and last known addresses are also determinable from the defendants' records to provide notice.

82.    The defendants' acts and omissions that give rise to the claims in this action are made on grounds generally applicable to the class members, making final injunctive or declaratory relief appropriate with respect to the class as a whole. All the class members were subject to the same policies and practices of the defendants, and all were similarly denied their wages and other rights under the NYLL. The defendants' policies and practices affected all

class members' similarly, and the defendants benefitted similarly from the same unlawful actions toward each class member.

83.    Common questions of law and fact exist as to each class member, including the following:

a.    Whether the defendants employed the class members within the meaning of the New York Labor Law.

b.    Whether the defendants failed to pay the class members the minimum wage required by New York law and regulations by failing to pay for all hours they worked.

c.    Whether the defendants violated NYLL § 195 by failing to provide compliant wage notices upon hire and compliant wage statements with each payment of wages.

d.    Whether the defendants violated NYLL § 196-d by keeping a portion of tips earned by the class members.

e.    Whether the defendants fail to qualify for the tip credit for the class members' pay under New York law because they failed to notify the class members in writing of the terms and conditions of the tip credit as required by 12 NYCRR § 146-2.2(a).

f.    Whether the defendants fail to qualify for the tip credit for the class members' pay under 12 NYCRR § 146-2.9 because the class members spent more than 20% of their work time working in non-tipped occupations.

g.    Whether the defendants fail to qualify for the tip credit for the class members' pay under 12 NYCRR § 146-1.3(b)(3) by paying several of the class members at hourly wage rates that were lower than the minimum cash wages rates required by New York law and its supporting regulations.

h.    Whether the defendants failed to pay the class members the minimum wage required by New York law and regulations by requiring them to purchase uniforms with their own money and thus effectively reducing the class members' pay below minimum wage.

84.    These common questions of fact and law predominate over any individual questions.

85.     The plaintiffs' claims are typical of the class they seek to represent. The plaintiffs and class members have all worked for the defendants in the same job, in the same restaurant, under the same policies and practices. The plaintiffs and class members have the same statutory rights that the plaintiffs seek to vindicate through this action, and have sustained the same types of damages as a result of the defendants' violations of those rights.

86.     The plaintiffs will fairly and adequately represent the interests of the class. The plaintiffs have retained counsel that is competent and experienced in wage and hour litigation and class litigation, especially under New York law. There is no known conflict between the plaintiffs and the class members.

87.     A class action is the superior method of fairly and efficiently adjudicating this dispute. Although the individual class members' damages are not de minimis, they are small compared to the expense and burden of individually litigating their claims. Class members as individuals lack financial resources necessary to thoroughly investigate and vigorously prosecute a lawsuit against the defendants to recover their damages. A class action is also superior because it will avoid the need for unduly duplicative litigation that may result in inconsistent judgments were multiple employees to attempt to litigate their claims separately.

88.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3).

## FIRST CAUSE OF ACTION
### (FLSA – Unpaid Minimum Wages)

89.     Plaintiffs incorporate by reference all previous allegations.

90.     29 U.S.C. § 206 requires employers to pay employees the minimum wage for all hours worked.

91.     The defendants are employers within the meaning of 29 U.S.C. § 206.

92.    The plaintiffs and collective action members were the defendants' employees within the meaning of 29 U.S.C. § 206.

93.    The defendants knew or should have known that their unlawful policies and practices, as described in this complaint, were unlawful.

94.    The defendants did not make a good faith effort to comply with their obligations to pay minimum wages under the FLSA.

95.    The defendants willfully violated the FLSA by knowingly and intentionally failing to pay the plaintiffs and collective action members their minimum wages.

96.    The defendants knowingly deprived the plaintiffs and collective action members of their earned minimum wages by (a) automatically deducting breaks that the plaintiffs and collective action members never took, (b) preventing the plaintiffs and collective action members from clocking in until they began to wait their first table, thus requiring them to work the first portion of each shift without pay, (c) taking a portion of their tips and pay to pay credit card processing fees, thus effectively reducing their pay below minimum wage, (d) paying less than the minimum wage without qualifying for the tip credit, and (e) requiring them to purchase uniforms with their own money, thus effectively reducing their pay below minimum wage.

97.    As a result of the defendants' violations, the plaintiffs and collective action members have suffered damages and are entitled to recovery their unpaid minimum wages, liquidated damages, attorneys' fees and costs, and pre- and post-judgment interest.

## SECOND CAUSE OF ACTION
### (FLSA – Misappropriation of Tips)

98.    Plaintiffs incorporate by reference all previous allegations.

99.    29 U.S.C. § 203(m)(2)(B) prohibits employers from retaining tips received by their employees for any purpose, including allowing managers or supervisors to keep any portion of employees' tips.

100.    The defendants willfully violated the FLSA by taking a portion of the plaintiffs' and collective action members' tips and giving them to Defendant Andy Brown.

101.    The defendants also willfully violated the FLSA by taking a portion of the plaintiffs' and collective action members' tips to pay credit card processing fees beyond the portion of the fee attributable to processing tips paid by credit card.

102.    As a result of the defendants' violations, the plaintiffs and collective action members have suffered damages and are entitled to recovery their misappropriated tips, liquidated damages, attorneys' fees and costs, and pre- and post-judgment interest.

### THIRD CAUSE OF ACTION
### (NYLL – Unpaid Minimum Wages)

103.    Plaintiffs incorporate by reference all previous allegations.

104.    New York Labor Law § 652 and regulations issued under the NYLL, *see* N.Y.C.R.R., tit. 12, § 146-1.2, require employers to pay employees the minimum wage for all hours worked.

105.    Defendants are employers within the meaning of New York Labor Law § 652 and the regulations issued thereunder.

106.    The plaintiffs and class members were the defendants' employees under the NYLL.

107.    Through their unlawful policies, as described in this complaint, the defendants deprived the plaintiffs and class members of their earned minimum wages in violation of the NYLL and regulations issues thereunder.

108.    The defendants knew or should have known that their unlawful policies and practices, as described in this complaint, were unlawful.

109.    The defendants willfully violated the NYLL by knowingly and intentionally failing to pay the plaintiffs and class members their minimum wages.

110.    The defendants knowingly deprived the plaintiffs and class members of their earned minimum wages by (a) automatically deducting breaks that the plaintiffs and class members never took, (b) preventing the plaintiffs and class members from clocking in until they began to wait their first table, thus requiring them to work the first portion of each shift without pay, (c) paying less than the minimum wage without qualifying for the tip credit, (d) paying less than the minimum wage while requiring plaintiffs and class members to perform non-tip earning duties for more than two hours or 20% of their shifts, (e) paying several class members, including Tricia Harmon, less than even the required tipped food service worker minimum wage rate, and (f) requiring plaintiffs and class members to purchase uniforms with their own money, thus effectively reducing their pay below minimum wage.

111.    As a result of the defendants' violations, the plaintiffs and class members have suffered damages and are entitled to recovery their unpaid minimum wages, liquidated damages, attorneys fees and costs, and pre- and post-judgment interest.

### FOURTH CAUSE OF ACTION
**(NYLL – Failure to Provide Wage Notices)**

112.    The plaintiffs incorporate by reference all previous allegations.

113.    NYLL § 195(1) requires employers to provide employees, upon hire, with a wage notice setting forth the employee's rate of pay and the basis thereof, allowances claimed as part of the minimum wage, including the tip credit, and other information.

114.    The defendants failed to provide the wage notice required by NYLL § 195(1) to the plaintiffs and class members.

115.    As a result of the defendants' violation of NYLL § 195(1), each plaintiff and each class member is entitled to statutory damages under NYLL § 198(1-b) of $50 per work day that the violation persisted, up to a maximum of $5,000, plus attorneys' fees, costs, and disbursements.

### FIFTH CAUSE OF ACTION
**(NYLL – Failure to Provide Wage Statements)**

116.    The plaintiffs incorporate by reference all previous allegations.

117.    NYLL § 195(3) requires employers to provide employees with a statement with every payment of wages setting forth the dates of work covered by that payment, the rate of pay and the basis thereof, allowances claimed as part of the minimum wage, and other information.

118.    The pay stubs that the defendants provided do not comply with NYLL § 195(3) because they do not accurately reflect the hours that plaintiffs and class members worked and do not reflect allowances, such as the tip credit, taken against the minimum wage.

119.    As a result of the defendants' violation of NYLL § 195(1), each plaintiff and each class member is entitled to statutory damages under NYLL § 198(1-d) of $250 per work day that the violation persisted, up to a maximum of $5,000, plus attorneys' fees, costs, and disbursements.

### SIXTH CAUSE OF ACTION
**(NYLL – Misappropriation of Tips)**

120.    The plaintiffs incorporate by reference all previous allegations.

121.    NYLL § 196-d and regulations issued thereunder, *see* N.Y.C.R.R., tit. 12, §§ 146-2.14, 146-2.15 prohibit employers from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee.

122.    The defendants willfully violated these provisions by requiring the plaintiffs and class members to share a portion of the gratuities they received with Defendant Andy Brown.

123.    As a result of the defendants' willful violation of NYLL § 196-d and regulations issues thereunder, the plaintiffs and class members suffered damages and are entitled to recover their misappropriated tips, liquidated damages, attorneys' fees and costs, and pre- and post-judgment interest.

## PRAYER FOR RELIEF

Wherefore, the plaintiffs demand judgment against the defendants awarding the following:

a.    An order conditionally certifying the first and second causes of action as a collective action under 29 U.S.C. § 216(b), designating the plaintiffs as representatives of the FLSA collective action members, designating the plaintiffs' attorneys as counsel for the collective action members, requiring the defendants to produce a list identifying the names, dates of employment, and contact information of all collective action members, and authorizing the issuance of court-approved notice to the collective action members informing them of this action and of their right to opt into it by filing their written consent with the Court.

b.    A declaration that the defendants have violated the FLSA by failing to pay the plaintiffs and collective action members all their earned minimum wages and by misappropriating the plaintiffs' and collective action members' tips.

c.    An injunction enjoining the defendants from continuing to withhold the plaintiffs' and collective action members' earned minimum wages, and from continuing to misappropriate the plaintiffs' and collective action members' tips.

d.    An award of damages to the plaintiffs and collective action members of their unpaid minimum wages, misappropriated tips, liquidated damages, and attorneys' fees and costs.

e.    An order certifying the third, fourth, fifth, and sixth causes of action as a class action under Fed. R. Civ. P. 23, certifying the plaintiffs as class representative, and appointing the plaintiffs' counsel as class counsel, requiring the defendants to produce a list identify the names, dates of employment, and contact information of all class members, and authorizing the issuance of court-approved notice to the class members, informing them of this action and of their rights with respect to this action.

f.    A declaration that the defendants have violated the NYLL by failing to pay the plaintiffs and class members all their earned minimum wages, by misappropriating the plaintiffs' and class members' tips, and by failing to provide the plaintiffs and class members with compliant wage notices and wage statements.

g.    An injunction enjoining the defendants from continuing to withhold the plaintiffs' and class members' earned minimum wages, from continuing to misappropriate the plaintiffs' and class members' tips, and requiring the defendants to comply with the NYLL's wage notice and wage statement requirements.

h.    An award of damages to the plaintiffs and class members of their unpaid minimum wages, misappropriated tips, liquidated damages, statutory damages, and attorneys' fees and costs.

i.    All other relief that the Court finds is just and proper.

Dated: August 2, 2021          VAHEY LAW OFFICES, PLLC

                         _s/ Jared K. Cook_____
                         Jared K. Cook, Esq.
                         144 Exchange Boulevard, Suite 400
                         Rochester, New York 14614
                         Tel: (585) 262-5130
                         jcook@vaheylaw.com

                         PECHMAN LAW GROUP PLLC

                         Louis Pechman (*Admission Pending*)
                         Galen Baynes (*Admission Pending*)
                         488 Madison Avenue, 17th Floor
                         New York, NY 10022
                         Tel: (212) 583-9500
                         pechman@pechmanlaw.com
                         baynes@pechmanlaw.com

                         *Attorneys for plaintiffs, collective action members, and class members.*

21